**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

KERRY GASKINS,

    Plaintiff,

vs.                Case No. 3:16-cv-900-J-JRK

NANCY A. BERRYHILL,[1]
Acting Commissioner of Social Security,

    Defendant.
_____/

## **OPINION AND ORDER**[2]

### **I. Status**

Kerry Gaskins ("Plaintiff") is appealing the Commissioner of the Social Security Administration's final decision denying his claims for disability insurance benefits ("DIB") and supplemental security income ("SSI"). Plaintiff's alleged inability to work is a result of grand mal seizures. Transcript of Administrative Proceedings (Doc. No. 11; "Tr." or "administrative transcript"), filed September 20, 2016, at 77, 85, 97, 106, 247. On September 30, 2013, Plaintiff filed applications for DIB and SSI, alleging an onset disability date of July 1, 2013. Tr. at 77-84 (DIB), 85-92 (SSI) Plaintiff's applications were denied initially, see Tr. at 77-84, 93, 95, 119-21 (DIB), Tr. at 85-92, 94, 96, 122-24 (SSI), and were denied upon

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017. Pursuant to Rule 25(d)(1), Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Carolyn W. Colvin as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 12), filed September 20, 2016; Reference Order (Doc. No. 14), entered September 26, 2016.

reconsideration, see Tr. at 97-105, 115, 117,132-36 (DIB), Tr. at 106-14, 116, 118, 137-41 (SSI).

On October 2, 2015, an Administrative Law Judge ("ALJ") held a hearing, during which the ALJ heard from Plaintiff, who was represented by counsel, and a vocational expert ("VE"). Tr. at 45-76. The ALJ issued a Decision on November 6, 2015, finding Plaintiff not disabled through the date of the Decision. Tr. at 29-39.

The Appeals Council then received additional evidence consisting of a statement by Plaintiff. Tr. at 6; see Tr. at 299-300 (statement). On May 14, 2016, the Appeals Council denied Plaintiff's request for review, Tr. at 1-4, thereby making the ALJ's Decision the final decision of the Commissioner. On July 13, 2016, Plaintiff commenced this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) by timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

On appeal, Plaintiff makes the following argument: "The ALJ erred by not appropriately evaluating the medical evidence." Memorandum in Support of Complaint (Doc. No. 16; "Pl.'s Mem."), filed October 5, 2016, at 6 (emphasis and some capitalization omitted). More specifically, Plaintiff argues the ALJ's finding that "the seizures were currently stable on medications and would continue to be stable with medication compliance[ ] . . . is not supported by substantial evidence." Id. On January 20, 2017, Defendant filed a Memorandum in Support of the Commissioner's Decision (Doc. No. 17; "Def.'s Mem.") addressing Plaintiff's argument. After a thorough review of the entire record and consideration of the parties' respective memoranda, the undersigned determines that the Commissioner's final decision is due to be affirmed.

## II. The ALJ's Decision

When determining whether an individual is disabled,[3] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step sequential inquiry. See Tr. at 31-39. At step one, the ALJ determined that "[Plaintiff] has not engaged in substantial gainful activity since July 1, 2013, the alleged onset date." Tr. at 31 (emphasis and citations omitted). At step two, the ALJ found that "[Plaintiff] has the following severe impairment: seizure disorder." Tr. at 32 (emphasis and citations omitted). At step three, the ALJ ascertained that "[Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. at 32 (emphasis and citations omitted).

---

[3] "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

-3-

The ALJ determined that Plaintiff has the following residual functional capacity ("RFC"):

> [Plaintiff can] perform medium work as defined in 20 CFR [§§] 404.1567(c) and 416.967(c) except [Plaintiff] can lift and/or carry up to [fifty] pounds occasionally and no more than [twenty-five] pounds frequently; [Plaintiff] can sit, stand, and/or walk up to [six] hours in an [eight]-hour workday, with up to [six] hours seated; no climbing ladders, ropes or scaffolds; [Plaintiff] must avoid exposure to heat and humidity; only moderate exposure to noise; occasional exposure to pulmonary irritants, including fumes, odors, dusts, and gases; no exposure to hazardous conditions (unprotected heights, hazardous machinery); no exposure to strobe lights or computer screens.

Tr. at 32 (emphasis omitted). At step four, the ALJ relied on the testimony of the VE and found that "[Plaintiff] is capable of performing past relevant work as a Blender, Stock Clerk, Janitor, and Cashier." Tr. at 37 (emphasis omitted). The ALJ then proceeded to make alternative findings regarding the fifth and final step of the sequential inquiry. Tr. at 38-39. At step five, after considering Plaintiff's age ("52 years old . . . on the alleged disability onset date"), education ("at least a high school education"), work experience, and RFC, the ALJ again relied on the testimony of the VE and found "there are other jobs that exist in significant numbers in the national economy that [Plaintiff] also can perform," including "Industrial Cleaner" and "Food Service Worker." Tr. at 38. The ALJ concluded that "[Plaintiff] has not been under a disability . . . from July 1, 2013, through the date of th[e D]ecision." Tr. at 39 (emphasis and citations omitted).

### III. Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence' . . . ."

-4-

Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (internal quotation and citations omitted); see also McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence–even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## **IV. Discussion**

The undersigned first sets out the applicable law. Then, the issue raised by Plaintiff is discussed.

In addition to the substantial evidence standard set out in Section III above, the following law regarding noncompliance with prescribed treatment is discussed. The Regulations provide that noncompliance with prescribed treatment without a "good reason" will preclude a finding of disability. 20 C.F.R. §§ 404.1530(b), 416.930(b). Good reason exists when:

(1) The specific medical treatment is contrary to the established teaching and

-5-

> tenets of your religion.
> (2) The prescribed treatment would be cataract surgery for one eye when there is an impairment of the other eye resulting in a severe loss of vision and is not subject to improvement through treatment.
> (3) Surgery was previously performed with unsuccessful results and the same surgery is again being recommended for the same impairment.
> (4) The treatment because of its enormity (e.g. open heart surgery), unusual nature (e.g., organ transplant), or other reason is very risky for you; or
> (5) The treatment involves amputation of an extremity, or a major part of an extremity.

Id. "A medical condition that can reasonably be remedied either by surgery, treatment, or medication is not disabling." Dawkins v. Bowen, 848 F.2d 1211, 1213 (11th Cir. 1988) (quoting Lovelace v. Bowen, 813 F.2d 55, 59 (5th Cir.1987)) (internal quotation marks omitted).

As noted above, Plaintiff contends the ALJ's finding that "the seizures were currently stable on medications and would continue to be stable with medication compliance . . . is not supported by substantial evidence." Pl.'s Mem. at 6. Plaintiff asserts he is compliant with his medication, "the seizures continue[,] and the only change has been an increase in the seizure medication dosages or the medications." Id. at 7-8. Responding, Defendant argues that "substantial evidence supports the ALJ's Decision that Plaintiff was not disabled." Def.'s Mem. at 3 (emphasis and some capitalization omitted). According to Defendant, "[t]he evidence . . . supports the ALJ's conclusion that Plaintiff was non-compliant with his medications and that his seizures were controlled by the medication." Id.

Although Plaintiff argues at length about the ALJ's finding that Plaintiff was noncompliant with his medications, the ALJ did not rely solely on Plaintiff's noncompliance in making the disability finding. He also relied on the fact that Plaintiff is currently working and

on record evidence indicating Plaintiff's condition is stable.[4]

The ALJ summarized the medical evidence of record, see Tr. at 34-36, and found that "the record does not suggest that [Plaintiff's] symptoms are work preclusive," Tr. at 36. The ALJ observed that "[Plaintiff] testified that he was not able to work full-time because he does not believe he would be offered a full-time position, versus any health[-]related reason." Tr. at 37. Thus, the ALJ concluded that "[Plaintiff] is able to work, and believably would work on a full-time basis if offered the job." Tr. at 37. The ALJ also found that "[s]ituations where the seizures are not under good control are usually due to [Plaintiff's] noncompliance with the prescribed treatment rather than the ineffectiveness of the treatment itself." Tr. at 36. The ALJ concluded that "[t]he evidence documents that [Plaintiff's] seizures are currently stable and would continue to be stable with medication compliance." Tr. at 37. These findings are supported by substantial evidence.

First, the administrative transcript shows there have been instances in which Plaintiff's seizures were apparently caused by noncompliance with his prescribed medications. On August 29, 2013, Plaintiff was admitted to the Emergency Department ("ED") at Ed Fraser Memorial Hospital ("Ed Fraser") after suffering a seizure. See Tr. at 385-95. He reported he had stopped taking his prescribed medications eight to ten months prior. Tr. at 390. Plaintiff

---

[4] For the ALJ to deny disability benefits on the "sole ground" of noncompliance with prescribed treatment, the ALJ must determine whether the claimant is able to afford the treatment. Ellison v. Barnhart, 355 F.3d 1272, 1275 (11th Cir. 2003). Accordingly, "[w]here the ALJ d[oes] not rely significantly on the claimant's noncompliance . . . the ALJ's failure to consider evidence regarding the claimant's ability to afford her prescribed treatment does not constitute reversible error." Bellew v. Acting Comm'r of Soc. Sec., 605 F. App'x 917, 921 (11th Cir. 2015) (citing Ellison, 355 F.3d at 1275). Thus, although Plaintiff does not argue the ALJ erred by failing to consider whether Plaintiff was financially able to comply with his prescribed medications, the undersigned finds that this failure does not constitute reversible error because Plaintiff's noncompliance was not the sole ground upon which the ALJ found Plaintiff not disabled.

was advised he would be able to return to work on September 2, 2013.[5] Tr. at 386. On April 15, 2014, Plaintiff was again admitted to the ED at Ed Fraser due to a seizure he suffered at a laundromat. Tr. at 727; see 727-34 (ED report). Plaintiff stated he was taking his medications. Tr. at 727.

On November 22, 2014, Plaintiff was admitted to the ED at St. Vincent's Medical Center ("St. Vincent's") after he was "found unconscious on the road." Tr. at 413; see also Tr. at 402-509, 511-83, 586-704 (ED report). The ED report indicates that although "[Plaintiff] state[d] . . . that he [was] taking medications[,] . . . but according to the records, [Plaintiff] was not taking any medications." Tr. at 419; see also Tr. at 422 (note indicating, "[Plaintiff] was medically noncompliant, [and] not taking his [medication] as prescribed for unclear reasons"). The "principal discharge diagnosis[ was b]reakthrough seizure secondary to medication noncompliance." Tr. at 422 (some capitalization omitted). The report further indicates that "[Plaintiff did] not appear to be at increased risk for hospital readmission[,] but suspected medication noncompliance exacerbates the risk for readmission." Tr. at 458.

In January 2015, Plaintiff was admitted to the ED at Ed Fraser after suffering two seizures: one on January 29 and one on January 30. Tr. at 741-45 (January 29 ED report), 750-54 (January 30 ED report). The ED reports do not address whether Plaintiff was noncompliant with his medication at the time the seizures occurred. See Tr. at 741-45 (January 29 ED report), 750-54 (January 30 ED report). On February 21, 2015, Plaintiff was again admitted to the ED at Ed Fraser due to seizures. See Tr. at 761-72. The ED then referred Plaintiff to St. Vincent's for a consultation. Tr. at 763; see also Tr. at 1037-48 (St.

---

[5] The administrative transcript contains another note releasing Plaintiff to work on August 31, 2013. See Tr. at 385.

-8-

Vincent's consultation report). The consultation report from St. Vincent's states that although "[Plaintiff] denie[d] any medication noncompliance on his account, he is not [a] reliable historian." Tr. at 1040.

Second, the ALJ's finding that Plaintiff is able to work on a full-time basis, Tr. at 36, is supported by substantial evidence. Plaintiff testified he is currently working at Winn-Dixie, where he "stock[s] shelves." Tr. at 50. He stated he works twenty-one hours a week and sixteen hours a week on holidays. Tr. at 54. His counsel asked him: "[W]hat do you believe prevents you from working a full-time job?"; and Plaintiff responded: "I don't think any company would take the chance on me working a full-time job . . . with my history of seizures." Tr. at 58-59. Counsel then asked Plaintiff: "[I]f they offered you [a] full[-]time [job,] would you be able to perform that job, do you think?"; and Plaintiff responded the following:

> Well, I don't think they -- right now the job that I'm at right now they're trying to cut our pay to part time. And they have been doing that for a while now, and they cut a lot of other people out . . . to where they only get like five to [ten] hours a week. . . . And with my seizures with them also having them in the store there I don't think they [would] offer that to me at all. . . . I've been almost [sic] there for two years and I can get is [sic] anywhere between [twenty-one] hours to [sixteen] hours a week.

Tr. at 59. Plaintiff did not state whether he believes his condition would hinder his capacity to work full time. See generally Tr. at 49-67 (Plaintiff's testimony at hearing). Moreover, the November 2014 ED report indicates that the day after Plaintiff was admitted to the hospital, "[he was] eager to be discharged as he ha[d] work [that night] at 11:00 p.m." Tr. at 458.

In making his finding of disability, the ALJ properly considered Plaintiff's current employment. See Ellison, 355 F.3d at 1275-76 (in discrediting opinion of examining physician that plaintiff was "totally disabled," court considered "the fact that [the plaintiff] worked for several years in spite of his seizure disorder"). Thus, the ALJ did not err in finding that

-9-

Plaintiff's condition does not inhibit his capacity to work.

Third, substantial evidence supports the ALJ's finding that "[Plaintiff's] seizures are currently stable and would continue to be stable with medication compliance." Tr. at 37. At the hearing, Plaintiff testified that "between 2013 to 2014" his seizures were more frequent than they are now. Tr. at 64. Notably, the seizures that were likely caused by his noncompliance with medication occurred during this time period. See Tr. at 385-95 (August 2013), Tr. at 402-509, 511-83, 586-704 (November 2014). According to Plaintiff, "[i]n March [20]15[,] [the seizures] got less frequent." Tr. at 64. He testified that "the last [seizure he] had was in March of 2015." Tr. at 56. The administrative transcript, however, indicates Plaintiff's most recent seizure occurred in February 2015 (approximately seven months prior to the hearing). See Tr. at 1083 (June 2015 note indicating Plaintiff was hospitalized due to seizures in February 2015 without mentioning any other hospitalizations), Tr. at 761-72, 1037-48 (February 2015 medical report). Further, the ALJ correctly observed that "UF [Health] Family [Medicine] progress notes indicate[ ] that [Plaintiff's] seizures are controlled and stable on medications." Tr. at 36 (citation omitted); see Tr. at 1090 (April 2015 note indicating, "Grand mal [seizures are] stable currently with increase of med[ications]"). Thus, the ALJ did not err in finding that Plaintiff's condition is stable with medication compliance.

In sum, the ALJ's findings regarding Plaintiff's noncompliance with his medication, the severity of his condition, and his ability to work are supported by substantial evidence.

## V. Conclusion

After a thorough review of the entire record, the undersigned finds that the ALJ's Decision is supported by substantial evidence. Accordingly, it is

**ORDERED**:

1. The Clerk of Court is directed to enter judgment pursuant to sentence four of

42 U.S.C. § 405(g) and pursuant to § 1383(c)(3), **AFFIRMING** the Commissioner's final decision.

    2.    The Clerk is further directed to close the file.

**DONE AND ORDERED** at Jacksonville, Florida on September 25, 2017.

*James R. Klindt*
JAMES R. KLINDT
United States Magistrate Judge

bhc
Copies to:
Counsel of record